PEOPLE v REIGLE

PEOPLE v CONNOLLY

Docket Nos. 193644, 193645. Submitted February 11, 1997, at Lansing. Decided April 18, 1997, at 9:00 A.M. Leave to appeal denied, 456 Mich 864.

James Reigle, Jr., and Clark Connolly, both funeral directors, were bound over for trial in the Genesee Circuit Court on several counts of obtaining money by false pretenses for allegedly providing burial vaults that were not asphalt-coated and waterproof or water-resistant when purchasers were promised and paid for vaults with those features. The court, Thomas C. Yeotis, J., granted each defendant's motion to quash the information and dismiss the charges, finding a lack of probable cause to believe that representations concerning the waterproofness of the vaults were in fact false in light of the fact that exhumations had not been performed. The prosecution appealed.

The Court of Appeals *held*:

The district court did not abuse its discretion in binding over the defendants for trial. There was evidence at the preliminary examination from which could be inferred the elements of obtaining money by false pretenses: false representation concerning an existing fact, knowledge by defendants of the falsity of the representation, use of the representation with intent to deceive, and detrimental reliance by the victim on the false representation. The act of placing bodies in uncoated vaults rather than asphalt-coated vaults, when the complainants were led to believe that the bodies would be placed in asphalt-coated vaults, was a misstatement of present or existing fact. The defendants' knowledge of the falsity of their representation, their use of the misrepresentation with intent to deceive, and the complainants' detrimental reliance on the false representation can all be inferred from evidence indicating that the display model of the burial vault shown to the complainants at the funeral home had been mislabeled, the defendants told the complainants that asphalt-coated vaults would be provided, and the complainants paid for asphalt-coated vaults on the basis of the defendants' representations that such vaults would be provided.

Reversed and remanded for reinstatement of charges.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, and *Donald A. Kuebler*, Chief, Appeals, Research, and Training, for the people.

*Manley & Manley, P.C.* (by *Michael P. Manley*), for James Reigle, Jr.

*Manley & Manley, P.C.* (by *Frank J. Manley*), for Clark Connolly. ·

Before: MACKENZIE, P.J., and HOLBROOK, JR., and T. P. PICKARD*, JJ.

PER CURIAM. Defendants, funeral directors employed by Reigle Funeral Homes, were bound over on several counts of obtaining money by false pretenses, MCL 750.218; MSA 28.415. The circuit court subsequently granted their motions to quash the information and dismiss all charges. The prosecution appeals as of right. We reverse and remand.

Between June 1992 and March 1993, defendants arranged eight funerals in which individuals requested and paid $860 for waterproof, asphalt-coated cemetery vaults. The prosecution claimed that they actually received substantially less expensive vaults that were not coated and were not waterproof or water-resistant.

Genesee Valley Vault Company sold burial vaults to Reigle Funeral Homes. Part-owner Alton Rice testified that he sold nine different types of vaults. The least expensive vault was an unsealed concrete box. The next model up wholesaled for $215 and was known in the trade as the "white" vault. It had a sealed lid, but

---

* Circuit judge, sitting on the Court of Appeals by assignment.

was not asphalt-coated and was not waterproof or water-resistant. The next model, which wholesaled for about $230, was known as the "Tex" vault. Coated with asphalt, it was water-resistant but not waterproof. Rice testified that his company delivered white vaults for the graves of each of the complainants' deceased, and he produced business records to support this testimony. Rice testified that orders from Reigle for white vaults increased in June 1992.

John Reigle, the brother of defendant James Reigle and a former employee of Reigle Funeral Homes, testified that, after April 1992, the asphalt-coated vault displayed in one of the Reigle Funeral Homes bore the label "White Vault." Before that time, it bore a "Tex" label. On March 1, 1993, John Reigle learned that Reigle Funeral Homes had never displayed a white vault. The model that was labeled "White Vault"—actually a "Tex" model—sold for $860. The model that was known in the trade as a white vault was not included on Reigle Funeral Homes' price list.

The district court bound defendant Reigle over for trial on three counts, and defendant Connolly on four counts of obtaining money by false pretenses. Defendants successfully moved to dismiss the charges. In granting their motions, the circuit court stressed the fact that none of the vaults had been exhumed, and, therefore, there was no probable cause to believe that the representation that the vaults were waterproof was in fact false.

This Court's review of the circuit court's analysis of the bindover is de novo. This Court must determine if the magistrate committed an abuse of discretion in determining whether there was probable cause to believe that the defendant committed the offense

charged. *People v Tower*, 215 Mich App 318, 320; 544 NW2d 752 (1996). An abuse of discretion exists when an unprejudiced person, considering the facts upon which the trial court acted, would say there was no justification or excuse for the ruling. *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996).

A defendant must be bound over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant was the perpetrator. *Tower, supra* at 320. There must be some evidence from which each element of the crime may be inferred. Probable cause that the defendant has committed the crime charged is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that the accused is guilty of the offense charged. *Id.* At the preliminary examination, the prosecution is not required to prove each element of the crime beyond a reasonable doubt. Rather, where there is presented credible evidence both to support and to negate the existence of an element of the crime, a factual question that exists should be left to the jury. *People v Kieronski*, 214 Mich App 222, 229; 542 NW2d 339 (1995).

The prosecution argues that there was sufficient evidence to bind defendants over for trial because evidence was presented from which each element of the crime of obtaining money by false pretenses may be inferred. There are four elements to the crime of false pretenses: (1) a false representation concerning an existing fact, (2) knowledge by the defendant of the falsity of the representation, (3) use of the representation with intent to deceive, and (4) detrimental

reliance on the false representation by the victim. *In re People v Jory*, 443 Mich 403, 413; 505 NW2d 228 (1993).

The pretense relied upon to establish the offense of obtaining money by false pretenses must be a misrepresentation concerning a present or existing fact, or a past fact or event. It may not be a representation concerning a future event. *People v Cage*, 410 Mich 401, 404; 301 NW2d 819 (1981). A false statement of promise or intention may not be the basis of a conviction for false pretenses. *Id.* at 405. In the present case, the complainants all testified that they requested and paid for a waterproof or water-resistant burial vault that cost $860. Alton Rice testified that each of the complainants actually received a white vault, which was not waterproof. John Reigle testified that Reigle Funeral Homes had advertised an asphalt-coated, water-resistant vault, which was labeled "White Vault," for $860. From these facts, a reasonable person could infer that the complainants were led to believe that they were purchasing an asphalt-coated, water-resistant burial vault for $860, when they actually received an uncoated vault.

However, to establish probable cause to bind defendants over for trial on a charge of false pretenses, the prosecution must have presented some evidence of a false representation concerning an existing fact or a past fact. In *Cage*, the Court stated:

Although it is quite possible to view a false statement of intention, such as a promise which the promisor intends not to keep, as a misrepresentation of existing mental state, the great weight of authority holds that a false promise will not suffice for false pretenses, however fraudulent it may be. [410 Mich 404.]

In this case, defendants' statements were a false promise to deliver an asphalt-coated, waterproof vault. Even if defendants had never intended to deliver such a vault, these statements are not sufficient for false pretenses.

However, defendants implicitly represented that complainants received a vault that was waterproof by burying the deceased in the vault. A false pretense does not have to be expressed in words, but may be accomplished by an act. *People v Jones*, 126 Mich App 191, 197; 336 NW2d 889 (1983). The act of placing the bodies in uncoated vaults rather than asphalt-coated vaults, when the complainants were led to believe that the bodies would be placed in asphalt-coated vaults, was a misstatement of present or existing fact.

Under this analysis, the fact that the vaults were never exhumed is not dispositive, contrary to what the circuit court suggested. The prosecution presented evidence that the complainants requested waterproof vaults, but received white vaults, which were not waterproof or water-resistant. This evidence was sufficient to warrant a cautious person to believe that defendants misrepresented that the vaults they sold to complainants were waterproof.

The second and third elements of the crime of false pretenses are knowledge by the defendant of the falsity of the representation and use of the misrepresentation with intent to defraud. *Jory, supra* at 413. Defendants' knowledge and intent can be inferred from the entire evidence. *People v Cook*, 89 Mich App 72, 86; 279 NW2d 579 (1979). In the present case, the prosecution presented evidence that defendants had told complainants that the $860 vaults were asphalt-coated and waterproof and that the funeral home dis-

play of an asphalt-coated vault was labeled "White Vault." There was also evidence that "White Vault" is the industry name for a concrete vault that is not coated or waterproof. This evidence was sufficient to support an inference that defendants knew of the falsity of their misrepresentations and that they used the misrepresentations with intent to defraud the complainants.

Defendants argue that, under Michigan law, there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the victim and the utilization of those means has not been prohibited by the defendant. A representative of each of the deceased signed a contract that contained the following disclaimer:

> No claims were made to you as to the merchandise or services (embalming, casket, outer burial container) to the effect that embalming or the use of any merchandise available from us would delay the decomposition of the remains for a long term or indefinite time, or that any such merchandise would protect the body from gravesite substances. No representations or warranties were made to you about the protective features of caskets or outer burial containers other than those made by the manufacturer. The only warranties, express or implied, granted in connection with goods sold with the funeral service we arranged were the expressed written warranties, if any, extended by the manufacturers of such goods. No other warranties were extended to you.

In support of their argument, defendants cite *Webb v First of Michigan Corp*, 195 Mich App 470; 491 NW2d 851 (1992). However, *Webb* is inapposite. In *Webb*, the plaintiffs signed an agreement that provided that they understood the risks involved in investing in a limited partnership that ultimately failed. *Id.* at 474. Unlike in

this case, however, the complainants in *Webb* were never led to believe that they were investing in one partnership when in fact they were investing in a different partnership. In the present case, the complainants signed a contract that disclaimed all warranties that the product would be water-resistant. However, this does not address the fact that the complainants were shown and paid for an asphalt-coated Tex vault and actually received a less expensive white vault. The complainants in this case had no means of knowing that defendants would deliver a different vault than the one that complainants ordered.

The final element of the crime of false pretenses is detrimental reliance on the false representation by the victim. *Jory, supra* at 413. The element of reliance is essential because "the purpose of the false pretenses statute is to protect the unwary and negligent from the deceit of those who would take advantage of another's negligence or incompetence." *People v Wogaman*, 133 Mich App 823, 826-827; 350 NW2d 816 (1984). In the present case, the prosecution presented evidence that each complainant purchased an asphalt-coated burial vault on the basis of defendants' representations that the vault was water-resistant, and that each complainant paid defendants $860 on the basis of defendants' representation that complainants would receive the asphalt-coated vault. This evidence is sufficient to establish probable cause that the complainants detrimentally relied on defendants' misrepresentations. Accordingly, the district court did not abuse its discretion in binding defendants over on the charges of obtaining money under false pretenses. The circuit court erred in dismissing the charges.

Reversed and remanded for reinstatement of the charges. We do not retain jurisdiction.