686 N.W.2d 767 (2004)
262 Mich.App. 416
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Michael David GUTHRIE, Defendant-Appellant.
Docket No. 245891.
Court of Appeals of Michigan.
Submitted June 2, 2004, at Lansing.
Decided June 15, 2004, at 9:05 a.m.
Released for Publication September 1, 2004.
*768 Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, Norman W. Donker, Prosecuting Attorney, and Michael T. Garner, Assistant Prosecuting Attorney, for the people.
Dory A. Baron, Southfield, for the defendant on appeal.
Before: HOEKSTRA, P.J., and O'CONNELL and DONOFRIO, JJ.
O'CONNELL, J.
Following a jury trial, defendant was convicted of placing a harmful substance in food, MCL 750.397a. The trial court sentenced him to six months in jail with credit for time served. We affirm.
This case arose when a computer shop that intermittently employed defendant borrowed the use of a neighboring petgroomer's phone lines to test modems. The victim owned the grooming shop and opened the shop one morning to find that the phone was dead. She went next door to the computer shop to request assistance in remedying the problem, and found defendant sleeping in the back of the store. Defendant performed odd technical jobs for the computer shop's owner, and, in exchange, defendant stored computer equipment in the shop and used its back room to "crash." In the back room, defendant kept a two-liter soda bottle filled with stale urine to wreak vengeance on people who "disrespected" him.
When the victim stirred defendant with her rousing complaints about her dead phone, defendant woke long enough to provide her with a phone number for the computer shop's owner. After the number proved worthless, the victim returned and again asked defendant to restore her phone service. Defendant did not get out of bed, so the victim returned to her shop.
*769 Minutes later, defendant arrived at the grooming shop irate and carelessly destroyed some of its ceiling tiles in the process of accessing the shop's phone lines. He repeatedly shouted that the malfunctioning lines were not his fault or his responsibility. He worked on the lines for a few moments, then angrily left the store. He returned a few minutes later, leaned over the counter and shouted at the victim, telling her never to wake him up again. The phone worked for a few minutes and then went dead again.
The victim closed the shop on Saturday, and when a worker opened it again on Tuesday, she detected a powerful stench wafting out of the grooming shop. The worker notified the victim about the smell, and when the victim arrived, she discovered stale urine covering the floor of the shop, soaking her carpets and spilling over dog crates in the back. From the smell and the fact that her shop did not board pets over the weekend, the victim suspected that the urine had human origins, so she saved a sample of the urine, and began the extensive cleanup effort. During the cleanup, and still absorbing the shock of her situation, she absentmindedly took a partially rolled-up bag of pretzels from a six-foot high shelf and popped one of the pretzels into her mouth. It was wet. She immediately knew that the culprit had placed urine in the pretzels and hysterically ran to the bathroom to wash out her mouth. According to her testimony, the urine-soaked pretzel made her "kind of sick, kind of real sick."
When the police arrived, defendant admitted that he kept a bottle of urine for retaliatory purposes and admitted it would not be unlike him to vengefully urinate in the shop and on the pretzels.
On appeal, defendant argues that the prosecution presented insufficient evidence to support his conviction. When reviewing the sufficiency of the evidence, we "`view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'" People v. Johnson, 460 Mich. 720, 723, 597 N.W.2d 73 (1999), quoting People v. Wolfe, 440 Mich. 508, 515, 489 N.W.2d 748 (1992), opn amended 441 Mich. 1201 (1992). According to MCL 750.397a, "a person who places a harmful substance in any food, with intent to harm the consumer of the food ... is guilty of a felony ...."
Defendant first argues that insufficient evidence was presented to prove that he intended to harm the victim. We disagree. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." People v. Hardiman, 466 Mich. 417, 428, 646 N.W.2d 158 (2002). Further, minimal circumstantial evidence suffices to prove an actor's intent. People v. McRunels, 237 Mich. App. 168, 181, 603 N.W.2d 95 (1999). The prosecution produced evidence that defendant exchanged heated words with the victim and kept a two-liter bottle filled with urine to "deal" with people who disrespected him. The evidence also showed that defendant left the pretzels on a shelf where they were likely to be, and ultimately were, retrieved and consumed without the realization that they were contaminated. This evidence sufficed to support the inference that defendant intended to harm the victim.
Defendant next argues that the prosecution failed to present sufficient evidence to prove that the substance on the pretzels was urine. We disagree. An expert witness testified that creatinine and urea, two substances commonly found in urine, were found in the bag of pretzels. *770 Other witnesses testified that the pretzels smelled of urine and defendant possessed urine for purposes of retaliation. A rational trier of fact had more than sufficient justification to conclude that the substance on the pretzels was urine.
Finally, defendant argues that there was insufficient evidence presented to show that urine is a harmful substance. We disagree. An expert witness testified that urine can transmit disease through viruses or bacteria that it may contain. The witness also testified that the sample of urine from the pretzel bag contained bacteria. Therefore, a rational trier of fact could have found that the urine poured on the pretzels was a harmful substance.
Affirmed.
JOEL P. HOEKSTRA and PAT M. DONOFRIO, JJ., concur.