# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SAMER NASSIB ZAHR,

        Defendant-Appellant.

UNPUBLISHED
May 26, 2015

No. 312070
Wayne Circuit Court
LC No. 11-008606-FH

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of seven counts of false pretenses with intent to defraud involving a value of $20,000 to $50,000, MCL 750.218(5)(a), and passing false title to a motor vehicle, MCL 257.254.[1] For all eight of his convictions, the trial court sentenced defendant to five years' probation with 12 months to be served in the Wayne County Jail. We affirm defendant's convictions, but, under the authority of MCL 769.1k(1)(b)(*iii*), we remand for a determination of the factual basis for $600 in court costs imposed by the trial court; defendant's sentences are otherwise affirmed.

This case arises from defendant's involvement in a series of loan applications filed in 2005 and 2006. Between June and August of 2005, defendant sold four homes to his mother, Rajaa Zahr.[2] Rajaa applied for mortgages to purchase the homes through a "stated income" loan program under which applicants were required to report their income, but did not have to provide any independent proof of income. Mortgage broker Linda Khemmoro communicated with

---

[1] Defendant was also charged with, but acquitted of, second-degree money laundering, MCL 750.411n, conducting a criminal enterprise, MCL 750.159i(1), and conspiring to conduct a criminal enterprise, MCL 750.159i(4).

[2] Rajaa and defendant's wife, Chirine Ghandour, were charged and tried with defendant as codefendants. The trial court acquitted Rajaa of conducting a criminal enterprise, conspiring with defendant to conduct a criminal enterprise, and of four counts of false pretenses. Ghandour was also acquitted of one count of false pretenses.

defendant almost exclusively in completing the loan applications for Rajaa. Defendant represented to Khemmoro that Rajaa's income was $9,550 a month.

In August 2005, defendant applied for a business loan for his company, Flexible Transport, which rents vehicles for special events under the name Luxury Limousine. The loan was backed by the Small Business Administration (SBA). Although defendant is Flexible Transport's sole owner and corporate office holder, defendant identified his wife, Chirine Ghandour, as the president and 90% owner of the company on the loan application.

In May 2006, defendant applied for another SBA backed loan for his second business, Zahr's Real Estate Investments, which manages and leases residential properties. Defendant stated on the loan application that he intended to use the loan as working capital for Zahr's Real Estate Investments. Upon receiving a $100,000 loan, however, defendant transferred $95,000 of the loan proceeds to Luxury Limousine.

Four of defendant's seven false pretenses convictions arose from his misrepresentation of Rajaa's income during the mortgage application process, while another two were based on defendant's misstatements on the SBA loan applications. Defendant argues that the evidence was insufficient to support these six convictions.[3]

With respect to a claim that the evidence was insufficient to sustain a conviction, this Court, addressing a sufficiency argument in the context of a bench trial, stated in *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008), as follows:

> We review claims of insufficient evidence de novo. When ascertaining whether sufficient evidence was presented in a bench trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [Citations omitted.]

To establish false pretenses, in general, the prosecution must show: "(1) a false representation as to an existing fact; (2) knowledge by [the defendant] of the falsity of the representation; (3) use of the false representation with an intent to deceive; and (4) detrimental reliance on the false representation by the victim." *People v Bearss*, 463 Mich 623, 627; 625 NW2d 10 (2001) (citation omitted); see also MCL 750.218(1) ("A person who, with the intent to defraud or cheat makes or uses a false pretense to . . . ."). Concerning the real property sales, the

---

[3] The seventh false pretenses conviction arose from defendant's misrepresentation concerning his ownership of a Hummer, which defendant used in his limousine business. Defendant does not challenge this conviction, nor does he challenge the false title conviction under MCL 257.254.

trial court found that defendant falsely reported Rajaa's income to Khemmoro as $9,550 a month "with the intent to deceive, to place Rajaa Zahr in a higher income level so that the loan was virtually rubber stamped, [and] likely to be granted." The trial court credited Rajaa's 2005 tax return as showing that her true annual income was $35,246 (roughly $2,937 per month).

Defendant argues that there was insufficient evidence to prove that his statements concerning Rajaa's income were false. According to defendant, the trial court merely "suppos[ed]" that the statements regarding income "had to be false at the time [they were] made, given the ultimate discrepancy between stated income and actual income [as reflected on Rajaa's 2005 tax return]." Defendant confuses sufficiency of the evidence with the concept of inferences drawn from circumstantial evidence. Once again, " '[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (citation omitted). Rajaa's 2005 tax return showing an income of $35,246 was circumstantial proof that the $9,550 a month figure repeatedly offered by defendant was inaccurate, leading to a very reasonable inference that defendant had stated Rajaa's income falsely and did so with an intent to deceive lenders into approving her for a mortgage. As the finder of fact, the trial court was free to conclude that Rajaa's tax return constituted reliable proof of her actual income. See *People v Unger*, 278 Mich App 210, 228-229; 749 NW2d 272 (2008) (the factfinder is free to believe or disbelieve any of the evidence and deference is afforded to the factfinder in weighing the evidence). We agree with the trial court that the significant difference between the income reported on the loan applications ($114,600 a year) and the income shown on the tax return ($35,246 a year) suggests more than "sloppy bookkeeping."

Other evidence also supported the trial court's finding that defendant falsified his mother's income with deceptive intent. Michigan State Police Trooper Christopher Correveau testified that when he attempted to interview Rajaa, defendant interrupted and "demanded to know the nature of the interview," seeking to keep his mother out of the loan discussions. Defendant and Rajaa also initially confirmed that the reported income of $9,550 a month was accurate when Correveau first presented them with one of the loan applications. Yet when shown a copy of Rajaa's 2005 tax return with an income of roughly $35,000, defendant and Rajaa backtracked, claiming that the income on the tax return was accurate and that Rajaa had never signed the loan application. The evidence was sufficient to support the trial court's finding that defendant had falsely reported Rajaa's income.

Next, defendant argues that even if the income statements were false, he should not be responsible for them, because Rajaa was the loan borrower. Defendant overlooks his nearly exclusive role in the deception. Khemmoro testified that she communicated only with defendant in completing all of the loan applications and that he consistently reported Rajaa's income as $9,550 a month. It was defendant, not Rajaa, who gave Khemmoro a letter certifying that Rajaa was employed and that her monthly earnings were $9,550. And as noted above, defendant eventually told Correveau that his mother did not sign the loan application. In addition to the significant discrepancy between the income defendant reported and Rajaa's actual income, the trial court could infer defendant's intent to deceive and defraud because defendant benefitted from the home sales. See *People v Reigle*, 223 Mich App 34, 39-40; 566 NW2d 21 (1997) ("[The] [d]efendant's knowledge and intent can be inferred from the entire evidence."); see also *People v Guthrie*, 262 Mich App 416, 419; 686 NW2d 767 (2004) (minimal circumstantial

evidence is sufficient to prove a defendant's intent). Shortly after defendant received a deposit from the closing of a home sale, he would transfer a significant portion of the proceeds to Flexible Transport's bank account, thereby financing his limousine business. The evidence was sufficient to support the trial court's finding that defendant made the false representations with deceptive intent. And defendant was not relieved of criminal liability simply because Rajaa was the "borrower" with respect to the loans. Contrary to defendant's argument, his guilt was not based on him being Rajaa's "legally bound agent," in the sense that he was being held responsible as an agent for Rajaa's wrongdoing. Rather, it was defendant's own self-serving criminal acts, as clearly reflected in the evidence, that gave rise to the convictions. Finally, while the element is not addressed by defendant, there was also sufficient evidence of detrimental reliance.

Defendant makes the same argument regarding the SBA loan application for Flexible Transport, which identified Ghandour as the president and 90% owner of the company: "it was Ms. Ghandour who applied, signed for[,] and personally guaranteed the loan[,] and it is only Ms. Ghandour who can legally be held criminally responsible for her actions." Defendant is incorrect. Corporate filings and tax statements showed that defendant was the sole officer and owner of Flexible Transport. The SBA loan application made clear that "each proprietor, partner, office director, [or] holder of twenty percent or more" of the company applying had to be identified on the 1919 SBA Form and had to act as an individual guarantor for the loan. Business banking officer Jose Diaz recalled explaining these requirements to defendant and Ghandour. And although Diaz was unsure whether it was defendant or his wife who identified Ghandour as the president and 90% owner of Flexible Transport, he testified that defendant was the main source of information during the loan discussions. Defendant also contacted Diaz once the Flexible Transport loan was under investigation, and again reached out to Diaz "a couple of times" within the three months of trial. Such conduct demonstrates defendant's awareness of his own wrongdoing. See, e.g., *People v Roscoe*, 303 Mich App 633, 642; 846 NW2d 402 (2014) (the defendant's request that his wife look into the victim's medical records, along with his Internet searches concerning the crime and review of local death notices, demonstrated consciousness of guilt). Moreover, the false statements on the loan application were not limited to the identification of Flexible Transport's ownership and management. The trial court also found that defendant "inflated the 2002 gross sales receipts," by representing that Flexible Transport had earned $335,000 in gross receipts when its tax return showed gross receipts of only $194,665. Defendant does not challenge this finding. The evidence was sufficient to sustain defendant's conviction for false pretenses in connection with the SBA loan application for Flexible Transport.

Defendant also contends that the evidence was insufficient to support his conviction for false pretenses in connection with the SBA loan for Zahr's Real Estate Investments. The trial court found that defendant committed false pretenses with regard to this loan by transferring the loan proceeds to Luxury Limousine instead of using it for the purpose identified on the SBA loan application. Defendant admits "that the majority of the funds from the Zahr Real Estate loan went to the Luxury Limousine business," but argues that this was not improper because "nothing in the record [indicates] that [defendant] was told or had any personal knowledge that he could not use the funds for another business." This is untrue. Defendant signed a "Business Loan and Security Agreement" as part of the SBA loan application, which specifically prohibited the transfer of loan funds to another company, unless done in the ordinary course of business. In the

same month that the $100,000 loan was distributed to Zahr's Real Estate Investments, the company issued four checks worth a total of $95,000 to Luxury Limousine. The trial court could reasonably infer that these transfers were not done in the ordinary course of business. Further, defendant made a second misrepresentation on the loan application, claiming Zahr's Real Estate Investments grossed $890,000 in total sales receipts for 2004, when tax documentation from the same year showed actual gross sales receipts of only $35,240. Defendant does not dispute the finding that his report of the gross sales receipts was false. The evidence was sufficient to support defendant's conviction of false pretenses in connection with the SBA loan application for Zahr's Real Estate Investments.

Finally, defendant argues that the trial court lacked authority under MCL 769.1k to impose $600 in court costs as part of his sentence. Given the Legislature's amendment of MCL 769.1k, which now authorizes the imposition of "any cost reasonably related to the actual costs incurred by the trial court[,]" §§ 1k(1)(b)(*iii*), and considering the amendment's valid retroactive effect encompassing the date of defendant's sentencing, *People v Konopka*, __ Mich App __; __ NW2d __, issued March 3, 2015 (Docket No. 319913), there is general authority to impose court costs in this case. However, remand is necessary "for determination of the factual basis for the costs imposed pursuant to MCL 769.1k(1)(b)(*iii*)." *Konopka*, slip op at 16.

Affirmed with respect to defendant's convictions, but remanded for a determination of the factual basis for the $600 in court costs imposed by the trial court; defendant's sentences are otherwise affirmed. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola

-5-