# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES C. MULHOLLAND, JR.,

Defendant-Appellant.

UNPUBLISHED
March 1, 2018

No. 335078
Ingham Circuit Court
LC No. 15-001145-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

THOMAS MULHOLLAND,

Defendant-Appellant.

No. 335218
Ingham Circuit Court
LC No. 15-001085-FH

Before: O'CONNELL, P.J., and BECKERING and STEPHENS, JJ.

PER CURIAM.

In these consolidated appeals, defendants, James C. Mulholland, Jr. and Thomas Mulholland, appeal as of right convictions for conducting a criminal enterprise, MCL 750.159i(1), conspiracy to conduct a criminal enterprise, MCL 750.157a and MCL 750.159i(1), obtaining money ($20,000 to $50,000) by false pretenses, MCL 750.218(5)(a), obtaining money ($1,000 to $20,000) by false pretenses, MCL 750.218(4)(a), fraudulent scheme or statement in connection with the sale of a security, MCL 451.501, selling an unregistered security, MCL 451.701,[1] fraudulent sale of securities, MCL 451.2501, and general securities act violations, MCL 451.2508. The trial court sentenced both defendants to concurrent prison terms of 120 to

---

[1] MCL 451.501 and MCL 451.701 were repealed, effective October 1, 2009, 2008 PA 551, but the new Michigan Uniform Securities Act, MCL 451.2703(1), provides that the former Uniform Securities Act applies to facts and circumstances occurring before that date.

240 months each for conducting a criminal enterprise and conspiracy to conduct a criminal enterprise, 100 to 180 months for obtaining money ($20,000 to $50,000) by false pretenses, 36 to 60 months for obtaining money ($1,000 to $20,000) by false pretenses, and 72 to 120 months each for fraudulent scheme or statement in connection with the sale of a security, fraudulent sale of securities, selling an unregistered security, and general securities act violations. We affirm defendants' convictions but vacate their sentences and remand for resentencing.

## I. BACKGROUND

Defendants owned and operated Mulholland Financial. The company used investor money to purchase rental property and issued "demand notes" to investors. These "demand notes" were not registered as securities. In 2009, Mulholland Financial began to experience financial difficulties, yet defendants continued to seek new investments. Defendants did not disclose the company's financial difficulties when soliciting new investments. Instead, they promised a return rate of 7% interest and assured investors they could get their money back with 30 days' notice. On January 1, 2009, Mulholland Financial had a balance of $218,648.11 and owed $18.3 million to investors. From March 2009 through February 2010, defendants paid earlier investors more than $1 million with new investor money, converting their business to a Ponzi scheme. The company and defendants filed for bankruptcy protection in February 2010.

## II. DISCUSSION

## A. EXPERT TESTIMONY

Thomas argues that the trial court erred by allowing Joseph Spiegel, a securities expert, to testify about legal issues. To preserve an evidentiary issue, the defendant must have objected to admission of the evidence at trial for the reasons asserted on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Because Thomas did not object to Spiegel's testimony at trial, this issue is not preserved for appeal. We review unpreserved evidentiary issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An unpreserved error affects a defendant's substantial rights when it is prejudicial, i.e., when it affects the outcome of the trial court proceedings. *Id*. at 763.

The parties agreed that the trial court would take judicial notice of the definition of a security, and the trial court admitted the relevant statute as an exhibit at trial. Unlike *People v Lyons*, 93 Mich App 35, 45-46; 285 NW2d 788 (1979), Spiegel did not testify about the legal definition of a security but offered his opinion that the facts demonstrated that the demand notes provided to investors were securities. Similarly, Spiegel's testimony that a letter to an investor failed to make appropriate disclosures was an opinion based on the facts. MRE 704 allows expert testimony to embrace an ultimate issue to be considered by the trier of fact. Therefore, Thomas has failed to demonstrate plain error.

In addition, to the extent that admission of Spiegel's testimony could be considered improper, Thomas has not established prejudice. The trial court instructed the jury how to assess expert testimony, including assessing the expert's credibility, reasoning, and qualifications, and the weight to accord his testimony. The trial court also instructed the jury that it was the jury's job to decide the facts and the trial court's duty to instruct the jury about the law. "Jurors are

presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Thomas has presented no reason to conclude that the jury did not follow instructions. Therefore, Thomas has not shown that any error arising from Spiegel's testimony affected his substantial rights.

Thomas further argues that defense counsel's failure to object to Spiegel's testimony denied him the effective assistance of counsel. Defense counsel is not required to make a meritless objection. *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). Spiegel's testimony was admissible because he did not improperly comment on a legal issue, so defense counsel had no basis for objecting. Thomas has otherwise failed to show that trial counsel's performance was objectively unreasonable. Further, Thomas made no argument about prejudice. Accordingly, Thomas failed to demonstrate that he was denied the effective assistance of counsel, and we decline to remand for a hearing on the matter.

## B. SUFFICIENCY OF THE EVIDENCE

Thomas argues that the evidence was insufficient to support his convictions for obtaining money by false pretenses. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). We "view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* (quotation marks and citation omitted).

To prove the offense of obtaining money by false pretenses, the prosecution must show "(1) a false representation concerning an existing fact, (2) knowledge by the defendant of the falsity of the representation, (3) use of the representation with intent to deceive, and (4) detrimental reliance on the false representation by the victim." *People v Reigle*, 223 Mich App 34, 37-38; 566 NW2d 21 (1997). Thomas contests the sufficiency of the evidence supporting the first element, arguing that it cannot be based on a material omission, namely, the failure to disclose information. Thomas's argument is incorrect. In *People v Jory*, 443 Mich 403, 417; 505 NW2d 228 (1993), our Supreme Court concluded that the crime of false pretenses can be committed through silence or concealment.

Thomas acknowledges that one investor testified that she would not have invested money with the company if she had known that Mulholland Financial was not making payments to other investors, the company owed $18.3 million to investors, and it did not have the money to pay the investors. According to the witness, when she invested $20,000 with defendants in August 2009, she was told that defendants "still had all of their real estate" and that her "money was guaranteed." She was not told about defendants' mortgage debt or debt to other investors. Similarly, another witness testified that when he invested $15,000 of his severance pay in December 2009, defendants never indicated that the company was not generating income, how much they owed to other investors, or how much they owed on mortgages. He explained that he would not have invested money with the company if he had known of the company's financial condition. This evidence supports the jury's finding beyond a reasonable doubt that defendants solicited funds under false pretenses by knowingly suppressing existing facts that had a direct bearing on the company's ability to repay its investors and to pay interest as represented by defendants. Therefore, Thomas has not identified a gap in the evidence.

-3-

## C. RIGHT TO PRESENT A DEFENSE

In a pro se brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Thomas argues that the trial court violated his constitutional right to present a defense by refusing to allow him to introduce evidence that several attorneys advised him that the promissory notes were not securities, thus negating the intent element. Thomas did not raise this issue in the trial court, so it is unpreserved. Accordingly, we review it for plain error affecting Thomas's substantial rights. See *Carines*, 460 Mich at 763-764.

The record does not support this claim of error. Thomas did not call any witnesses or attempt to introduce the testimony he argues was improperly excluded. Rather, during James's testimony, James's counsel acknowledged that the content of a conversation between James and an attorney was inadmissible hearsay. James's counsel elicited testimony that James consulted with an attorney and that he obtained a promissory note from the attorney before he started acquiring property using promissory notes. James's counsel did not attempt to introduce any documentary evidence or call the attorneys who purportedly provided legal advice or the promissory note. Similarly, Thomas did not seek to call any witnesses or offer any evidence that was excluded by the trial court. Therefore, Thomas has failed to demonstrate plain error.

## D. SENTENCING

James and Thomas both argue that resentencing is necessary because the trial court erred in scoring the sentencing guidelines. We agree.

In *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015), our Supreme Court declared Michigan's sentencing guidelines advisory. Even so, sentencing courts must still calculate the sentencing guidelines range. *Id*.

James and Thomas both argue that the trial court erred in its scoring of offense variables (OVs) 4, 9, and 10. The sentencing court's factual scoring determinations must be supported by a preponderance of the evidence, and we review them for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (quotation marks and citation omitted). This Court reviews de novo "whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute[.]" *Hardy*, 494 Mich at 438.

### 1. OV 4

Defendants argue that the trial court erroneously scored OV 4 at 10 points because there was no evidence that the victims suffered serious psychological injury requiring professional treatment. OV 4 warrants 10 points if a victim experienced "[s]erious psychological injury requiring professional treatment . . . ." MCL 777.34(1)(a). Although it is not necessary for the victim to seek treatment, the record must contain evidence of psychological injury. *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). "The trial court may not simply assume that someone in the victim's position would have suffered psychological harm because MCL 777.34 requires" actual psychological injury. *Id*. For example, a description of the victim as " 'visibly shaken' " in the absence of other evidence about the victim's psychological state

was insufficient to show "that the victim suffered a *serious* psychological injury." *People v McChester*, 310 Mich App 354, 358-359; 873 NW2d 646 (2015).

In the present case, the trial court assessed 10 points for OV 4 because people suffered "damages." The presentence investigation report contains no information indicating that any of the victims suffered serious psychological harm, the record contains no victim impact statements, and no victim offered testimony about his or her psychological state at trial or made a statement at sentencing. The trial court's reasoning was insufficient to assess 10 points for OV 4. Because a preponderance of record evidence does not establish that a *serious* psychological injury actually "occurred to a victim," the trial court clearly erred by assessing 10 points for OV 4.

### 2. OV 9

Defendants argue that the trial court erred by assessing 25 points for OV 9,[2] which considers the "number of victims" associated with an offense. MCL 777.39(1). A sentencing court should "[c]ount each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a). The present case involves only allegations of property loss. Twenty-five points are proper when "20 or more victims . . . were placed in danger of property loss," MCL 777.39(1)(b), 10 points when "4 to 19 victims . . . were placed in danger of property loss," MCL 777.39(1)(c), and zero points when "fewer than 4 victims . . . were placed in danger of property loss," MCL 777.39(1)(d).

The trial court scored 25 points for OV 9 based on the total number of investors who lost money as a result of defendants' conduct. OV 9 is offense-specific and depends only on the number of people affected when the sentencing offense was committed. *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008). OV 9 does not encompass events after completion of the offense. *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009). In this case, the presentence investigation report identified 10 victims associated with defendants' conduct of conducting a criminal enterprise. The trial court, however, erroneously looked beyond the sentencing offense and counted all persons affected by defendants' overarching criminal scheme of defrauding investors as victims for purposes of OV 9. Thus, the trial court should have assessed 10 points for OV 9 for 10 victims rather than 25 points for 20 or more victims. Because defendants' conduct for the sentencing offense only placed the named victims in danger of losing property, the trial court erred by assessing 25 points for OV 9.

### 3. OV 10

Defendants argue that the trial court erred by assessing 15 points for OV 10. We disagree. OV 10 relates to "exploitation of a vulnerable victim." MCL 777.40(1). Predatory

---

[2] During James's sentencing, the trial court scored OV 9 only for the convictions for conducting a criminal enterprise. During Thomas's sentencing, the trial court purported to score OV 9 for all other convictions that were scored (i.e., all offenses except obtaining money ($20,000 to $50,000) by false pretenses and fraudulent sale of securities). It appears, however, that the trial court intended to score the guidelines in the same manner for both defendants.

conduct merits 15 points. MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a).

To assess points for OV 10, it should be "readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation." *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008). Vulnerability is not limited to a victim's personal characteristics, but can include "a victim's relationships or circumstances." *People v Huston*, 489 Mich 451, 464; 802 NW2d 261 (2011).

The evidence showed that most of the victims were not random. Most were people with whom defendants had an established business relationship, and defendants initiated contact with the victims to solicit additional funds. Defendants' prior or ongoing relationship with the victims, combined with the degree of trust established, made the victims vulnerable to defendants' additional "investment" opportunities. The victims were susceptible to defendants' persuasion to invest because they trusted them. Thus, a preponderance of the evidence supports a finding that the victims met the definition of a "vulnerable person" for purposes of scoring OV 10. Accordingly, the trial court did not err by assessing 15 points for OV 10.

## 4. GUIDELINES CALCULATION

### a. DOCKET NO. 335078

A recalculation of James's OV scores shows that the trial court should resentence James. Conducting a criminal enterprise is a class B offense, MCL 777.16i. James's OV score for counts 1 and 2 was 60 points, placing him in OV Level V (50 to 74 points) in the class B sentencing grid, MCL 777.63. Prior record variable (PRV) Level C combined with OV Level V gave a guidelines range of 51 to 85 months.[3] A reduction of 25 points in the OV score (10 points for OV 4 and 15 points for OV 9) lowers James's total OV score from 60 to 35 points, placing him in OV Level IV (35 to 49 points) and resulting in a guidelines range of 45 to 75 months.

Obtaining money ($1,000 to $20,000) by false pretenses, fraudulent scheme or statement in connection with the sale of a security, selling an unregistered security, and violating the securities act are all class E offenses. MCL 777.14j; MCL 777.16*l*. James's total OV score for these counts was 35 points, placing him in OV Level IV (35 to 49 points) in the Class E sentencing grid, MCL 777.66. PRV Level C and OV Level IV resulted in a guidelines range of 5 to 23 months. A reduction of 10 points for OV 4 lowers James's total OV score from 35 to 25 points, placing James in OV Level III (25 to 34 points), with a range of 0 to 17 months.

Because the scoring errors affect James's appropriate ranges, he is entitled to resentencing. See *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016). Thus, we need not address James's argument regarding the reasonableness of the sentences imposed. On resentencing, the trial court shall resentence James consistent with *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017).

---

[3] The trial court inaccurately identified the range as 51 to 78 months.

## b. DOCKET NO. 335218

Recalculating Thomas's OV scores also requires resentencing. Thomas's total OV score for the criminal enterprise and conspiracy convictions was 60 points for each, placing him in OV Level V (50 to 74 points). PRV Level C combined with OV Level V resulted in a guidelines range of 51 to 85[4] months. A reduction of 25 points (10 points for OV 4 and 15 points for OV 9) lowers Thomas's total OV score from 60 points to 35 points, placing him in OV Level IV (35 to 49 points) and resulting in a guidelines range of 45 to 75 months.

The trial court scored the guidelines for Thomas's convictions for obtaining money ($1,000 to $20,000) by false pretenses, fraudulent scheme or statement in connection with the sale of a security, selling an unregistered security, and violating the securities act. Thomas's total OV score for these counts was 60 points for each, placing him in OV Level V (50 to 74 points). OV Level V, combined with PRV Level C, produced a guidelines range of 7 to 23 months in the Class E sentencing grid, MCL 777.66. A reduction of 10 points for OV 4 lowers Thomas's total OV score from 60 to 50 points, which is still within OV Level V. However, Thomas's 60-point score includes 25 points for OV 9. The trial court did not score OV 9 for James with respect to these convictions, and it appears that the trial court intended to score the guidelines consistently for both defendants. Treating Thomas's challenge to the scoring of OV 9 as encompassing the scoring of the guidelines for these other counts, Thomas's OV score for these counts should have been 25 points, which would have placed him in OV Level III (25 to 34 points), resulting in a guidelines range of 0 to 17 months.

Because the scoring errors affect Thomas's guidelines ranges, he is also entitled to resentencing. See *Biddles*, 316 Mich App at 156. Thus, we need not address Thomas's argument regarding the reasonableness of the sentences imposed. On resentencing, the trial court shall resentence Thomas consistent with *Steanhouse*, 500 Mich 453.

We affirm defendants' convictions but vacate their sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Jane M. Beckering

---

[4] The trial court inaccurately identified the range as 51 to 78 months.