*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID ALLEN ORBON,

Defendant-Appellant.

UNPUBLISHED
June 10, 2025
11:15 AM

No. 370277
Van Buren Circuit Court
LC No. 2023-024721-FH

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

A jury convicted defendant of assault on a prison employee, MCL 750.197c, and the trial court sentenced him to serve 29 months to 5 years' imprisonment. Defendant appeals as of right, arguing that he is entitled to resentencing because Offense Variable (OV) 1, MCL 777.31, was improperly scored. We affirm.

## I. BACKGROUND

This case arises out of defendant's action of spitting in the face of a deputy while incarcerated at the Van Buren County Jail. On June 9, 2023, deputies of the Van Buren County Sheriff's Office observed defendant repeatedly throwing himself against the wall and door of his holding cell, and they were concerned that defendant would harm himself. The deputies ordered defendant to approach the door so that they could secure him and remove him from the cell, but defendant refused. Because of defendant's continued noncompliance, the deputies pepper sprayed defendant twice. Once the deputies removed defendant from the cell, defendant looked at one of the deputies and spit in his face, including his eyes. After defendant was secured, the deputy flushed out his eyes at an eyewash station in the jail receiving area. As a preventative measure, the jail sent the deputy and defendant to a local hospital for testing. The medical staff at the hospital again flushed out the deputy's eyes. Blood tests for the deputy and the defendant were negative for any bacteria, viruses, or diseases.

The prosecutor's office charged defendant with assault on a prison employee, and at the conclusion of trial, the jury found defendant guilty. At sentencing, the trial court assessed OV 1 at 20 points for aggravated use of a weapon, and defendant did not object. Defendant later moved

to correct an invalid sentence. The trial court held an evidentiary hearing at which it heard testimony from the victim and the jail nurse. At the conclusion of the hearing, the trial court denied defendant's motion, holding that OV 1 was properly assessed at 20 points because it determined that (1) pepper spray was a harmful chemical device and that (2) saliva fit within the definition of "harmful biological substance." The trial court concluded that the deputy experienced eye problems after the incident because of the pepper spray that was potentially in defendant's saliva. Additionally, the trial court noted that the actual contaminants in defendant's saliva were considered "so dangerous" that "it ha[d] to be . . . flushed out immediately."

Defendant now appeals.

## II. ANALYSIS

Defendant argues that the trial court erred when it assessed 20 points for OV 1 because his saliva did not contain any harmful substances. We disagree.

"The interpretation and application of the legislative sentencing guidelines, MCL 777.1 *et seq.*[,] involve legal questions that this Court reviews de novo." *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). "De novo review means we review this issue independently, without any required deference to the courts below." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). However, "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A trial court's finding is clearly erroneous when we are left with the definite and firm conviction that the trial court made a mistake. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (citation omitted). The prosecution bears the burden of establishing facts in support of a particular score by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "Preserved scoring issues are reviewed to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score." *People v Waclawski*, 286 Mich App 634, 680; 780 NW2d 321 (2009) (quotation marks and citation omitted).

The sentencing guidelines are advisory in all cases. *People v Steanhouse*, 500 Mich 453, 470; 902 NW2d 327 (2017). Nevertheless, the sentencing guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion," and courts "must consult . . . and take them into account when sentencing." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015) (quotation marks and citation omitted). When calculating sentencing guidelines, the trial court must assign the highest number of points possible. *Id.* at 392 n 28; see also MCL 777.31(1). "[A] court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *McChester*, 310 Mich App at 358.

MCL 777.31 governs the score for aggravated use of a weapon:

(1) Offense variable 1 is aggravated use of a weapon. Score offense variable 1 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(b) The victim was subjected or exposed to a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device ................................................................................. 20 points

\* \* \*

(3) As used in this section:

(a) 'Chemical irritant', 'chemical irritant device', 'harmful biological substance', 'harmful biological device', 'harmful chemical substance', 'harmful chemical device', 'harmful radioactive material', 'harmful radioactive device', and 'imitation harmful substance or device' mean those terms as defined in section 200h of the Michigan penal code, 1931 PA 328, MCL 750.200h.

MCL 750.200h(g) defines a "harmful biological substance" as "a bacteria, virus, or other microorganism or a toxic substance derived from or produced by an organism that can be used to cause death, injury, or disease in humans, animals, or plants." Certain bodily fluids are considered harmful biological substances. See *People v Odom*, 276 Mich App 407, 413; 740 NW2d 557 (2007) (HIV-infected blood); *People v Guthrie*, 262 Mich App 416, 420; 686 NW2d 767 (2004) (urine that contained bacteria).

Although little published caselaw exists on this issue, cases discussing harmful biological substances have included evidence that the bodily fluid contained some harmful bacteria, viruses, or other microorganisms.[1] See *Odom*, 276 Mich at 413. For example, in *Guthrie*, 262 Mich App 419-420, an expert witness testified that urine could transmit disease through viruses or bacteria that it may contain; additionally, a witness testified that a sample of the urine in that case *did* contain bacteria. Therefore, this Court determined that the defendant's urine was a harmful substance. *Id*. at 420.

---

[1] See, e.g., *People v Jones*, unpublished per curiam opinion of the Court of Appeals, issued September 17, 2019 (Docket No. 342000), p 5 (holding that "urine does not qualify as a harmful substance under OV 1, unless it contains 'bacteria, virus, or other microorganisms' that can cause disease in humans"); *People v Lanoue*, unpublished per curiam opinion of the Court of Appeals, issued August 19, 2014 (Docket No. 315720), p 9 (concluding that there was insufficient evidence to support an assessment of 20 points for OV 1 when "there was no evidence that the urine at issue actually contained bacteria, viruses, or other microorganisms that can cause disease in humans"), rev'd in part on other grounds 498 Mich 902 (2015); but see *People v Huddleston*, unpublished per curiam opinion of the Court of Appeals, issued November 12, 2009 (Docket No. 285961), p 6 (taking judicial notice that fecal matter "contains harmful bacteria that could cause disease in another human being"). Although unpublished cases are not binding on this Court under the rule of stare decisis, MCR 7.215(C)(1), they may be considered persuasive or instructive. See *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

In this case, although there was testimony from the jail nurse that all bodily fluid is treated as infectious, ultimately, the test results of defendant and victim were negative. In light of the test results and the caselaw on this issue, defendant argues that it was erroneous for the trial court to conclude that defendant's saliva was, in and of itself, a harmful biological substance. However, even if we agreed with defendant's argument, we would affirm the trial court nonetheless because "[t]his Court will not reverse when a lower court reaches the right result for the wrong reason." *People v Hawkins*, 340 Mich App 155, 195; 985 NW2d 853 (2022).

A "harmful chemical substance" is defined as "a solid, liquid, or gas that through its chemical or physical properties, alone or in combination with 1 or more other chemical substances, can be used to cause death, injury, or disease in humans, animals, or plants." MCL 750.200h(i). Pepper spray meets the definition of "harmful chemical substance." *People v Savage*, 327 Mich App 604, 623-627; 935 NW2d 69 (2019). Even if the assessment of OV 1 on the basis of defendant's saliva alone was an error under the definition of a "harmful biological substance," the trial court nevertheless properly assessed 20 points for OV 1 on the basis of defendant's saliva containing pepper spray, which is a harmful chemical substance.[2] See *id*. at 627.

The trial court concluded that pepper spray was introduced into the victim's eye because defendant had been pepper sprayed in the face before spitting at the deputy. Moreover, the court recognized that the intended effect of pepper spray is irritation, and the victim suffered eye irritation after the incident. The prosecution bolsters this conclusion in its brief by noting, "There was testimony both at trial and the evidentiary hearing that Defendant had been sprayed multiple times on his face, hair, and body[;] that Defendant was 'smearing [the pepper spray] all over himself'[;] and that the pepper spray was 'running' and 'smeared all over the place.' " Further, defendant's own testimony supports this conclusion because defendant testified that he spit on the ground to "get that substance . . . out of [his] mouth." Defendant testified that the pepper spray was in his mouth, it had a disgusting taste, he did not want to swallow it, and was spitting it out.

The trial court did not err by assessing OV 1 at 20 points because the evidence supports the conclusion that defendant's saliva was mixed with pepper spray, and, therefore, the victim was subjected or exposed to a harmful chemical substance when defendant spit in his face and eyes. See MCL 777.31(1)(b). That is, although the victim was not directly pepper sprayed, the pepper spray was present in defendant's saliva when he spit on the victim. The victim testified that he suffered from eye issues for months after the assault, including that he developed a sore in his left eye, it was red, it was twitching, and he had vision issues with that eye so he had to wear glasses until it resolved.

While defendant has attempted to distinguish this case from *Odom*, we find that the facts of the present case are actually similar to *Odom*, 276 Mich at 413. In both cases, the respective defendants spit either a harmful biological substance or harmful chemical substance upon a corrections officer, i.e., the defendant in *Odom* spit HIV-infected blood and defendant in the

---

[2] To be clear, we will not decide the issue of whether saliva, by itself, meets the definition of "harmful biological substance" because we do not need to answer that question in order to decide the issue presented in this case.

present case spit pepper spray mixed with saliva. Defendant argues that, in *Odom*, it was not the spit itself that was found to be the harmful biological substance, it was the infected blood; however, defendant fails to mention that the court in *Odom* never addressed the issue of whether saliva, itself, could be a harmful biological substance.[3] As in the present case, the Court in *Odom* did not need to address that issue because the victim was exposed to a separate substance that met the requirements of MCL 777.31(1)(b), i.e., the infected blood.

## III. CONCLUSION

Considering the record evidence, the trial court did not clearly err when it found by a preponderance of the evidence that defendant's saliva was likely mixed with pepper spray and, therefore, when defendant spit into the face of the victim, that victim was exposed to a harmful chemical substance. Thus, the trial court properly assessed 20 points for OV 1.

Affirmed.

/s/ Christopher P. Yates
/s/ Adrienne N. Young
/s/ Randy J. Wallace

---

[3] In fact, the word "saliva" appears nowhere in the *Odom* opinion.

-5-